ALB:JMH
F.#2016R01027

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

IN THE MATTER OF THE SEARCH OF:

(1) ONE BLACK HEWLETT PACKARD
LAPTOP COMPUTER, MODEL NO. 15-
B412DX, SERIAL NUMBER
5CD3269NT1; and

(2) ONE WHITE APPLE MACBOOK,

CURRENTLY LOCATED IN ATF
CUSTODY WITHIN THE EASTERN
DISTRICT OF NEW YORK.

**16M725**

APPLICATION FOR A SEARCH
WARRANT FOR ELECTRONIC DEVICES

Case No. _____ **16M725**

## AFFIDAVIT IN SUPPORT OF AN
## APPLICATION UNDER RULE 41 FOR A
## WARRANT TO SEARCH AND SEIZE

I, KIERAN P. KEENAGHAN, being first duly sworn, hereby depose and state as

follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal

Rules of Criminal Procedure for a search warrant authorizing the examination of property—two

electronic devices—which are currently in law enforcement possession, and the extraction from

that property of electronically stored information described in Attachment B.

2.      I have been a Task Force Officer with the Bureau of Alcohol, Tobacco, Firearms

and Explosives ("the ATF") since August 2014. I have been with the New York City Police

Department for more than 20 years. I have been involved in the investigation of numerous cases involving robberies, the illegal use of firearms, and the unlawful distribution of controlled substances. I have participated in investigations involving search warrants, including searches of electronic devices, and arrest warrants. As a result of my training and experience, I am familiar with the techniques and methods of operation used by individuals involved in criminal activity to conceal their activities from detection by law enforcement authorities.

3. I have personally participated in the investigation set forth below. I am familiar with the facts and circumstances of the investigation through my personal participation; from discussions with other agents and representatives of other law enforcement agencies; and from my review of records and reports relating to the investigation.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

5. The property to be searched is: (1) ONE BLACK HEWLETT PACKARD LAPTOP COMPUTER, MODEL NO. 15-B412DX, SERIAL NUMBER 5CD3269NT1; and (2) ONE WHITE APPLE MACBOOK, hereinafter the "DEVICES." As described below, the DEVICES were seized on or about May 25, 2016, from the basement of a residence at ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ in Brooklyn, New York, and are currently located in ATF custody within the Eastern District of New York.

6.      The applied-for warrant would authorize the forensic examination of the
DEVICES for the purpose of identifying electronically stored data particularly described in
Attachment B.

### PROBABLE CAUSE

7.      The ATF is investigating ALAN FRANCOIS, JERMAINE GLISSON,
ALTARIQ MCIVER and MARQUIS RILEY for conspiracy, robbery and the unlawful use of
firearms. These defendants are charged by indictment in this district with (1) conspiracy to
commit Hobbs Act robberies, in violation of 18 U.S.C. § 1951(a); (2) three substantive Hobbs
Act robberies, in violation of 18 U.S.C. § 1951(a);[1] and (3) the unlawful use of firearms, in
violation of 18 U.S.C. § 924(c), among other offenses. A copy of the indictment, docketed as
16-CR-281 (PKC), is attached hereto as Exhibit A.

8.      The ATF is also investigating these defendants for other crimes, including the
unlawful distribution of controlled substances, in violation of 21 U.S.C. §§ 841 and 846; the
unlawful use of access devices, in violation of 18 U.S.C. § 1029; and the unlawful possession of
firearms following a conviction for a felony, in violation of 18 U.S.C. § 922(g).

9.      On May 25, 2016, agents went to ███████████ in Brooklyn in order to
attempt to arrest FRANCOIS based on an arrest warrant obtained pursuant to the above-
referenced indictment. FRANCOIS was not present.[2]

---

[1]      Each defendant is charged with one or more of the substantive robberies.

[2]      FRANCOIS was arrested in July 2016 and released on bond, subject to
home incarceration.

3

10. In the course of conducting a visual sweep of the basement of ███████ ███ to determine whether or not FRANCOIS was present, agents identified, in plain view, various credit cards and debit cards, bulletproof vests, two closed safes, narcotics paraphernalia, and a police scanner. Agents secured the location based on these observations, and sought a search warrant.

11. On May 25, 2016, the Honorable Viktor V. Pohorelsky authorized a search warrant for the basement of the ███████████████ in Brooklyn. That warrant, along with the affidavit of ATF Special Agent Greg Horowitz ("the Horowitz Affidavit"), is attached hereto as Exhibit B. See also Ex. B, Horowitz Affidavit, at ¶¶ 14-18 (noting identification of items referenced above in plain view), ¶ 19 (noting that location was secured once it was confirmed FRANCOIS was not present). That warrant authorized the seizure of the DEVICES, but did not authorize the search of the DEVICES themselves. See Ex. B, Attachment A, n.2.

12. The facts stated in the Horowitz Affidavit are incorporated herein by reference, and summarized below as necessary to demonstrate that there is probable cause to search the DEVICES.

13. During the execution of the above-referenced search warrant, agents recovered the following items, among others:

    a. One black Sentry safe, containing:

        i. One Phoenix Arms .25 caliber pistol, serial number 4344092;

        ii. 319 rounds of assorted ammunition;

      iii.  Various credit cards in various names;

      iv.  One Sig Sauer magazine;

      v.  Various bank receipts;

b.  Four ballistics vests (including one bearing an NYPD-issued serial number);

c.  One police scanner;

d.  Two scales;

e.  Various clear plastic bags, some of which contained a green leafy substance;

f.  Various bank cards, gift cards and identification cards and documents;

g.  Fifteen cellular telephones (of various makes and models);

h.  One .40 caliber Glock magazine; and

i.  The DEVICES.

14.     One of the credit cards recovered bore the name ALAN FRANCOIS.

15.     Based on my review of their criminal histories, I know that FRANCOIS and MCIVER have previously been convicted of felony offenses.[3]

---

[3]    MCIVER is charged in the indictment with being a felon in possession of a firearm (not the firearm recovered from ████████████ as set forth above). See Ex. A at ¶ 5.

16.     Based on my training and experience, and the facts revealed in the course of this investigation, there is probable cause to believe that the DEVICES contain relevant evidence, including in particular: (1) indicia of who owns and/or has used the DEVICES, which would be relevant to determining the ownership of the other items referenced above, in particular the firearm, ammunition, magazines, and ballistics vests, all of which are items that could be used to commit Hobbs Act robberies in violation of 18 U.S.C. § 1951, such as the Hobbs Act robberies charged in the indictment; (2) communications between the owner and/or users of the DEVICES and co-conspirators, both known and unknown, in furtherance of the conspiracy charged in the indictment.

17.     Based on my training and experience, I know that the scales and clear plastic bags recovered in the course of the search are items commonly used by narcotics traffickers to weigh and package controlled substances in order to facilitate the unlawful distribution of those substances.

18.     Based on my training and experience, I know that computers such as the DEVICES are often used to effect crimes involving the unlawful distribution of controlled substances and the fraudulent use of access devices, such as the various credit cards and gift cards found during the course of the search.  For example, computers can be used, along with other equipment, to re-encode the magnetic strips of credit, debit and gift cards in order to forge an access device.  In my training and experience, the presence of multiple credit, debit and gift cards and identification documents in various names is consistent with the fraudulent use of access devices.  Computers such as the DEVICES can also be used to maintain records relevant

to the unlawful distribution of controlled substances, such as communications with suppliers and purchasers, as well as ledgers or records of receipts and debts.

19. The DEVICES are currently in the lawful possession of the ATF within the Eastern District of New York, and have been since they were seized as described above. Therefore, while the ATF might already have all necessary authority to examine the DEVICES, I seek this additional warrant out of an abundance of caution to be certain that an examination of the DEVICES will comply with the Fourth Amendment and other applicable laws.

20. In my training and experience, I know that the DEVICES have been stored in a manner in which their contents are, to the extent material to this investigation, in substantially the same state as they were when the DEVICES first came into the possession of the ATF.

## TECHNICAL TERMS

21. Based on my training and experience, I use the following technical terms to convey the following meanings:

      a. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP

addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

b. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

22. Based on my training, experience, and research, I know that the DEVICES have capabilities that allow them to connect to the Internet. In my training and experience, examining data stored on DEVICES of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device, and/or where the DEVICES were when they were used.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

23. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the DEVICES. This information can sometimes be recovered with forensics tools.

24. There is probable cause to believe that things that were once stored on the Device may still be stored there, for at least the following reasons:

a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been

downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

25.    *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the Device because:

a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active.  Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords.  Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

b.  Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw

conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.  The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

26.    *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

27.    *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve

the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## **CONCLUSION**

28.     I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the DEVICES described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

KIERAN P. KEENAGHAN
Task Force Officer
ATF

Subscribed and sworn to before me
on August 4, 2016

THE HONORABLE STEVEN M. GOLD
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

**ATTACHMENT A**

The property to be searched is: (1) ONE BLACK HEWLETT PACKARD LAPTOP COMPUTER, MODEL NO. 15-B412DX, SERIAL NUMBER 5CD3269NT1; and (2) ONE WHITE APPLE MACBOOK, hereinafter the "DEVICES." The DEVICES were seized on or about May 25, 2016, from the basement of a residence at ████████████ in Brooklyn, New York, and are currently located in ATF custody within the Eastern District of New York.

This warrant authorizes the forensic examination of the DEVICES for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.    All records on the DEVICES described in Attachment A that relate to violations of 18 U.S.C. §§ 922(g), 924(c), 1029, and 1951(a), and 21 U.S.C. §§ 841 and 846, and involve ALAN FRANCOIS, JERMAINE GLISSON, ALTARIQ MCIVER, MARQUIS RILEY and others known and unknown, since November 2015, including:

    a.  the illegal purchase or transfer of firearms;

    b.  lists of customers and related identifying information;

    c.  types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

    d.  any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

    e.  any records of addresses, telephone and email/social media contact information of criminal associates, instant messages and other electronic communications including information pertaining to the source of firearms, persons or businesses to target for robbery, and individuals to whom stolen cellular telephones and other contraband, including but not limited to controlled substances, are resold;

    f.  any information recording the schedule or travel of FRANCOIS, GLISSON, MCIVER and RILEY from November 2015 to the present;

    g.  all bank records, checks, credit card bills, account information, and other financial records;

h. photographs and video images which show identities of conspirators, contraband and evidence of the violations identified above

i. Internet access records, including IP Address records;

j. templates used for generating identification documents;

k. credit card account numbers and lists thereof; and

l. encoding of credit card magnetic strips.

2.    Evidence of user attribution showing who used or owned the DEVICES at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3.    Records of Internet Protocol addresses used;

4.    Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

JD:JMH
F. #2016R01027

FILED
CLERK

2016 MAY 25 AM 10: 05

U.S. DISTRICT COURT
EASTERN DISTRICT
OF NEW YORK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

ALAN FRANCOIS,
JERMAINE GLISSON,
ALTARIQ MCIVER and
MARQUIS RILEY,

           Defendants.

I N D I C T M E N T

**CR 16              0281**
No.

(T. 18, U.S.C., §§ 922(g)(1), 924(a)(2),
924(c)(1)(A)(i), 924(c)(1)(A)(ii),
924(c)(1)(A)(iii), 924(d), 981(a)(1)(C),
1951(a), 2 and 3551 et seq.;
T. 21, U.S.C., § 853(p);
T. 28, U.S.C., § 2461(c))

**CHEN, J.**

**MANN. M.J.**

- - - - - - - - - - - - - X

THE GRAND JURY CHARGES:

COUNT ONE
(Hobbs Act Robbery Conspiracy)

1.    In and around and between December 2015 and January 2016, both dates

being approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendants ALAN FRANCOIS, JERMAINE GLISSON, ALTARIQ MCIVER and

MARQUIS RILEY, together with others, did knowingly and intentionally conspire to

obstruct, delay and affect commerce, and the movement of articles and commodities in

commerce, by robbery, to wit: the robbery of commercial merchandise from a residence

located on Junius Street in Brooklyn, New York, an AT&T store located on Cross Bay

Boulevard in Queens, New York, and a Verizon Wireless store located on Avenue P in Brooklyn, New York.

(Title 18, United States Code, Sections 1951(a) and 3551 et seq.)

## COUNT TWO
(Hobbs Act Robbery on January 4, 2016)

2.     On or about January 4, 2016, within the Eastern District of New York, the defendants ALAN FRANCOIS, ALTARIQ MCIVER and MARQUIS RILEY, together with others, did knowingly and intentionally obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by robbery, to wit: the robbery of commercial merchandise from one or more individuals at a residence located on Junius Street in Brooklyn, New York.

(Title 18, United States Code, Sections 1951(a), 2 and 3551 et seq.)

## COUNT THREE
(Hobbs Act Robbery on January 8, 2016)

3.     On or about January 8, 2016, within the Eastern District of New York, the defendants ALAN FRANCOIS and ALTARIQ MCIVER, together with others, did knowingly and intentionally obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by robbery, to wit: the robbery of commercial merchandise from employees of an AT&T store located on Cross Bay Boulevard in Queens, New York.

(Title 18, United States Code, Sections 1951(a), 2 and 3551 et seq.)

## COUNT FOUR
(Hobbs Act Robbery on January 28, 2016)

4.      On or about January 28, 2016, within the Eastern District of New York,

the defendants ALAN FRANCOIS, JERMAINE GLISSON, ALTARIQ MCIVER and

MARQUIS RILEY, together with others, did knowingly and intentionally obstruct, delay and

affect commerce, and the movement of articles and commodities in commerce, by robbery, to

wit: the robbery of commercial merchandise from employees of a Verizon Wireless store

located on Avenue P in Brooklyn, New York.

(Title 18, United States Code, Sections 1951(a), 2 and 3551 et seq.)

## COUNT FIVE
(Felon In Possession of a Firearm)

5.      On or about January 28, 2016, within the Eastern District of New York,

the defendant ALTARIQ MCIVER, having previously been convicted in a court of a crime

punishable by a term of imprisonment exceeding one year, did knowingly and intentionally

possess in and affecting commerce a firearm, to wit: a Taurus .40 caliber handgun and

ammunition.

(Title 18, United States Code, Sections 922(g)(1), 924(a)(2) and 3551 et seq.)

## COUNT SIX
(Possessing, Brandishing and Discharging a Firearm During Crimes of Violence)

6.      In and around January 2016, within the Eastern District of New York,

the defendants ALAN FRANCOIS, JERMAINE GLISSON, ALTARIQ MCIVER and

MARQUIS RILEY, together with others, did knowingly and intentionally use and carry one or

more firearms during and in relation to one or more crimes of violence, to wit: the crimes

charged in Counts One through Four, and did knowingly and intentionally possess such firearms in furtherance of said crimes of violence, one or more of which firearms was brandished and discharged.

(Title 18, United States Code, Sections 924(c)(1)(A)(i), 924(c)(1)(A)(ii), 924(c)(1)(A)(iii), 2 and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION AS TO COUNTS ONE THROUGH FOUR

7.    The United States hereby gives notice to the defendants that, upon their conviction of any of the offenses charged in Counts One through Four, the government will seek forfeiture in accordance with: (a) Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offenses to forfeit any property, real or personal, which constitutes or is derived from proceeds traceable to such offenses; and (b) Title 18, United States Code, Section 924(d) and Title 28, United States Code, Section 2461(c), which require the forfeiture of any firearm or ammunition involved or used in any violation of any criminal law of the United States.

8.    If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

   a.    cannot be located upon the exercise of due diligence;

   b.    has been transferred or sold to, or deposited with a third party;

   c.    has been placed beyond the jurisdiction of the court;

   d.    has been substantially diminished in value; or

   e.    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 924(d) and 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

## CRIMINAL FORFEITURE ALLEGATION AS TO COUNT FIVE

9.      The United States hereby gives notice to the defendant ALTARIQ MCIVER that, upon his conviction of the offense charged in Count Five, the government will seek forfeiture in accordance with Title 18, United States Code, Section 924(d) and Title 28, United States Code, Section 2461(c), which require the forfeiture of any firearm or ammunition involved or used in a knowing violation of such offense, to wit: a Taurus .40 caliber handgun and ammunition.

10.     If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

a.      cannot be located upon the exercise of due diligence;

b.      has been transferred or sold to, or deposited with a third party;

c.      has been placed beyond the jurisdiction of the court;

d.      has been substantially diminished in value; or

e.      has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 924(d); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

## CRIMINAL FORFEITURE ALLEGATION AS TO COUNT SIX

11.     The United States hereby gives notice to the defendants ALAN FRANCOIS, JERMAINE GLISSON, ALTARIQ MCIVER and MARQUIS RILEY that, upon their conviction of the offense charged in Count Six, the government will seek forfeiture in accordance with Title 18, United States Code, Section 924(d) and Title 28, United States Code, Section 2461(c), which require the forfeiture of any firearm or ammunition involved or used in a knowing violation of such offense.

12.     If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

        a.     cannot be located upon the exercise of due diligence;

        b.     has been transferred or sold to, or deposited with a third party;

        c.     has been placed beyond the jurisdiction of the court;

        d.     has been substantially diminished in value; or

        e.     has been commingled with other property which cannot be

divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 924(d); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

A TRUE BILL

_____
FOREPERSON

_____
ROBERT L. CAPERS
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

No. _____

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL DIVISION

THE UNITED STATES OF AMERICA

*vs.*

*ALAN FRANCOIS, JERMAINE GLISSON,*
*ALTARIQ MCIVER and MARQUIS RILEY,*

Defendants.

## INDICTMENT

(T. 18, U.S.C., §§ 922(g)(1), 924(a)(2), 924(c)(1)(A)(i), 924(c)(1)(A)(ii), 924(c)(1)(A)(iii), 924(d), 981(a)(1)(C), 1951(a), 2 and 3551 et seq.; T. 21, U.S.C., § 853(p); T. 28, U.S.C., § 2461(c))

_____

*A true bill.*

_____ _ _ _ _ _ _ _ _
                                              *Foreperson*

*Filed in open court this* _____ *day,*

*of* _____ *A.D. 20* _____

_____
                                              *Clerk*

*Bail, $* _____

_____

**J. Matthew Haggans, *Assistant U.S. Attorney (718) 254-6127***

# UNITED STATES DISTRICT COURT

for the

Eastern District of New York

| | |
|---|---|
| In the Matter of the Search of ) | |
| *(Briefly describe the property to be searched* ) | |
| *or identify the person by name and address)* ) | Case No. |
| THE PREMISES KNOWN AND DESCRIBED AS THE BASEMENT OF ███ 7 ) | |
| ███, BROOKLYN, NEW YORK ███, AND ANY CLOSED ) | |
| AND LOCKED COMPARTMENTS AND CONTAINERS FOUND THEREIN ) | |

# 16M 508

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ Eastern _____ District of _____ New York _____ *(identify the person or describe the property to be searched and give its location)*:

The basement of ███, Brooklyn, New York ███ and any closed and locked compartments and containers found therein.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment A.

**YOU ARE COMMANDED** to execute this warrant on or before _____ June 8, 2016 _____ *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.     ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ the Duty Magistrate Judge _____ .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*     ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:     *May 25, 2016 @ 2:35pm*
_____
*Judge's signature*

City and state:     Brooklyn, New York          Hon. Viktor V. Pohorelsky     U.S.M.J.
*Printed name and title*

## Return

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|
| | | |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

## Certification

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A
### Property to be Seized

The following items may be seized from the basement of a residence located at ███████████ Brooklyn, New York, ████ and any closed and locked compartments and containers found therein: (1) firearms; (2) ballistics or bulletproof vests; (3) ammunition and ammunition containers, such as magazines; (4) police scanners; (5) currency which may constitute robbery proceeds; (6) cellular telephones which may constitute robbery proceeds or may otherwise belong to FRANCOIS;[2] and (7) indicia of presence, occupancy, residency, rental and/or ownership of the premises described herein, including but not limited to keys and rental, purchase or lease agreements, identity documents, all of which constitute evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Sections 1951(a) and 924(c).

---

[2]    This warrant does not authorize the search of any cellular telephones or other electronic devices recovered in the course of the search.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - X
IN THE MATTER OF AN APPLICATION
FOR A SEARCH WARRANT FOR:

**1 6 M 5 0 8**

THE PREMISES KNOWN AND DESCRIBED
AS THE BASEMENT OF ███ ██
███, BROOKLYN, NEW YORK, ██
AND ANY CLOSED AND LOCKED
COMPARTMENTS AND CONTAINERS
FOUND THEREIN

FILED UNDER SEAL

AFFIDAVIT IN SUPPORT OF
APPLICATION FOR A SEARCH
WARRANT

- - - - - - - - - - - - - - - - - - X

EASTERN DISTRICT OF NEW YORK, SS:

GREG HOROWITZ, being duly sworn, deposes and says that he is a Special

Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), duly

appointed according to law and acting as such.

Upon information and belief, there is probable cause to believe that there is

kept and concealed within the premises known and described as THE PREMISES KNOWN

AND DESCRIBED AS THE BASEMENT OF ███ ████████ BROOKLYN,

NEW YORK, ███ AND ANY CLOSED AND LOCKED COMPARTMENTS AND

CONTAINERS FOUND THEREIN (the "TARGET PREMISES"), items which constitute

evidence, fruits and/or instrumentalities of conspiracy to commit Hobbs Act robberies, the

commission of Hobbs Act robberies, and the unlawful use of firearms in furtherance of said

crimes, as further described in attachment A hereto, all in violation of Title 18, United States

Code, Sections 1951(a) and 924(c), respectively.

The source of your deponent's information and the grounds for his belief are as follows:[1]

1.     I have been a Special Agent with ATF for approximately 18 months. Prior to joining the ATF, I was an Air Marshal with the Department of Homeland Security for approximately 7 years. I am responsible for conducting and assisting investigations into the activities of individuals and criminal groups responsible for committing firearms offenses, including but not limited to the commission of gunpoint robberies. I have participated in investigations involving search warrants and arrest warrants. As a result of my training and experience, I am familiar with the techniques and methods of operation used by individuals involved in criminal activity to conceal their activities from detection by law enforcement authorities. I am familiar with the facts and circumstances of this investigation from my personal participation in the investigation and from information obtained from other law enforcement agents.

## THE SUBJECT PREMISES

2.     The TARGET PREMISES is the basement level of a two-story red brick house located at                , BROOKLYN, NEW YORK,      ("the RESIDENCE"). The RESIDENCE in which the TARGET PREMISES is located has one entrance in the front, through a covered porch, and one entrance in the rear. The TARGET PREMISES is on the basement level of the RESIDENCE and is accessed by a

---

[1]     Because this Affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. The information contained in this Affidavit is based upon my conversations with other law enforcement officers, my review of various documents and records, and where specified, my personal observations and knowledge. Unless specifically indicated, all conversations and statements described in this Affidavit are related in substance and in part only.

door on the first story of the RESIDENCE. The RESIDENCE is not identified with a street number. From the vantage point in front of the building, the building immediately to the right of the RESIDENCE has a printed piece of paper identifying it as ▮▮▮▮▮▮▮. The building immediately to the left is prominently identified with the street number ▮▮▮ A photograph depicting the front of the RESIDENCE appears below. The RESIDENCE is on the left-hand side of the photograph; ▮▮▮▮▮▮▮ is visible on the right-hand side of the photograph.



FACTS ESTABLISHING PROBABLE CAUSE

3.    On May 24, 2016, a grand jury sitting in the Eastern District of New York returned an indictment charging ALAN FRANCOIS and others with various offenses, including but not limited to conspiracy to commit Hobbs Act robberies, the commission of

Hobbs Act robberies, and the unlawful use of firearms in furtherance of those robberies, all in violation of Title 18, United States Code, Section 1951(a) and 924(c), respectively, in and around December 2015 and January 2016. The indictment remains under seal.

4.       On the morning of May 25, 2016, along with other ATF and NYPD officers (collectively, "the Arrest Squad"), I attempted to arrest defendant FRANCOIS at the RESIDENCE. FRANCOIS had previously identified the RESIDENCE as his address in connection with his parole status from a criminal conviction in New York State.

5.       Along with the other officers, I arrived at the RESIDENCE at approximately 6:30 a.m. A member of the Arrest Squad knocked on the front door of the building for several minutes with no response. I saw and heard movement by one of the first-floor windows, which was open. We announced ourselves as police and asked to be admitted to the RESIDENCE repeatedly throughout this period. Each member of the Arrest Squad was wearing clothing that identified the wearer as a law enforcement officer.

6.       After several minutes, a female opened the door, who later stated that she was the owner of the RESIDENCE ("the Owner"). The Owner admitted me and other officers into the RESIDENCE. One of the other officers asked the Owner where we could locate "Alan," meaning FRANCOIS. The Owner stated that FRANCOIS was not present, but that the Owner's daughter was present on the second floor. One of the officers asked the Owner the name of her daughter. The Owner identified her daughter by name ("the Daughter").

7.       Based on our investigation, I know that FRANCOIS and the Daughter are, or at one time, were, in a romantic relationship and that the two have one or more children together.

8.      The Owner guided the law enforcement team to the second floor of the RESIDENCE. The Owner further stated that there were young children on the second floor. Other members of the Arrest Squad remained on the first floor to secure that area.

9.      I, along with members of the Arrest Squad, reached the second floor whereupon we encountered a female individual who identified herself as the Daughter. Along with the other officers, I proceeded to do a visual sweep of the second floor in an effort to locate FRANCOIS, and confirmed that FRANCOIS was not present on the second floor. One of the officers asked the Daughter "where's Alan?", meaning FRANCOIS. The Daughter responded that FRANCOIS was not there. The Daughter further stated that FRANCOIS had not been at the RESIDENCE for some time.

10.     I asked the Owner when was the last time she had seen FRANCOIS, and whether FRANCOIS had visited his child at the RESIDENCE. The Owner responded that she did not know.

11.     Based on the delay in opening the front door of the RESIDENCE, during which movement was seen and heard, and the demeanor and responses of the Owner and the Daughter, I believed there was a possibility FRANCOIS was still within the RESIDENCE, possibly hiding. We returned to the first floor and confirmed that FRANCOIS was not present on the first floor.

12.     During the visual sweep of the first floor, a member of the Arrest Squad asked the Owner whether there was a basement in the RESIDENCE. She confirmed that there was, and identified the door leading to the basement to the Arrest Squad. The door was secured by a slide lock, lockable only from the interior of the first floor. A member of the Arrest Squad opened the lock and the Squad proceeded through the door to the basement.

We proceeded to conduct a visual sweep of the basement to determine whether FRANCOIS was present.

13.      The basement is accessible through a narrow set of stairs. It appeared to be a finished space with a tiled floor, and subdivided into what appeared to be multiple rooms, including a mechanical space, a bathroom that appeared to be non-functional, a storage closet, and what appeared to be a workspace. A member of the Arrest Squad asked the Owner who used the basement. The Owner responded that no one used the basement.

14.      While conducting a visual sweep of the basement in an effort to locate FRANCOIS, members of the Arrest Squad located what appeared to be identification documents and credit or debit cards in the main area of the basement.

15.      While conducting a visual sweep of the storage closet in an effort to locate FRANCOIS, I observed that it was large enough to contain one or more individuals. Inside the storage closet, in plain view, I identified four ballistics or bulletproof vests. Based on my training and experience, some of the vests appeared to be of law enforcement or military-grade quality. One of the vests appeared to have been issued by the NYPD.

16.      In the main area of the basement, members of the Arrest Squad also observed two closed safes, in plain view. Based on my training and experience, both of the safes are large enough to conceal firearms, including firearms of the type that were used in the robberies charged in the indictment, one of which has already been recovered by law enforcement.

17.      In the main area of the basement, officers also observed a transparent fish tank, in plain view, in which there were two plastic baggies, also in plain view. Based

on my training and experience, the baggies appear consistent with baggies used to package small quantities of narcotics.

18.     In the workspace area of the basement, members of the Arrest Squad also observed a police scanner, in plain view. In the course of the investigation of one of the robberies charged in the indictment, a police scanner was recovered in a getaway car bearing a fingerprint later identified as belonging to FRANCOIS.

19.     Members of the Arrest Squad proceeded to secure and preserve the basement, i.e., the TARGET PREMISES, but did not conduct any further searching upon confirming that FRANCOIS was not present in the RESIDENCE.

20.     After the conclusion of the visual sweep, members of the Arrest Squad asked the Daughter how they could locate FRANCOIS. In sum and substance, the Daughter stated that she would attempt to contact FRANCOIS. She further stated that she had not seen FRANCOIS since approximately early February 2016, when FRANCOIS visited her at the RESIDENCE. She further stated that, prior to February 2016, she and FRANCOIS had resided together at another residence.

21.     Based on the foregoing, and my training and experience, I respectfully submit that there is probable cause to believe that the TARGET PREMISES contains evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Section 1951(a) and 924(c).

22.     One or more of the robberies charged in the indictment involved gunpoint robberies of cellular telephone stores, from which cellular telephones and possibly currency were taken.

23. Each of the robberies involved the use of a firearm, specifically a handgun. Two handguns have already been recovered in the course of the investigation from one of FRANCOIS's co-defendants.

## CONCLUSION

WHEREFORE, I respectfully request that the Court issue a warrant to search the TARGET PREMISES and seize the items listed in Exhibit A, attached hereto, that may constitute evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Sections 1951(a) and 924(c).

IT IS FURTHER REQUESTED that, in light of the confidential nature of the continuing investigation, this affidavit and all papers submitted submitted herewith be sealed until further order of the Court.

GREG HOROWITZ
Special Agent
ATF

Sworn and subscribed to before me
the 25th day of May, 2016

THE HONORABLE VIKTOR V. POHORELSKY
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

## ATTACHMENT A
Property to be Seized

The following items may be seized from the basement of a residence located at
████████████████████ Brooklyn, New York, ████ and any closed and locked
compartments and containers found therein: (1) firearms; (2) ballistics or bulletproof vests;
(3) ammunition and ammunition containers, such as magazines; (4) police scanners;
(5) currency which may constitute robbery proceeds; (6) cellular telephones which may
constitute robbery proceeds or may otherwise belong to FRANCOIS;[2] and (7) indicia of
presence, occupancy, residency, rental and/or ownership of the premises described herein,
including but not limited to keys and rental, purchase or lease agreements, identity
documents, all of which constitute evidence, fruits, and instrumentalities of violations of
Title 18, United States Code, Sections 1951(a) and 924(c).

---

[2]     This warrant does not authorize the search of any cellular telephones or
other electronic devices recovered in the course of the search.